# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

KENNETH L. BOTSFORD,

       Plaintiff,

v.                                Case No. 13-13379
                                         Hon. Lawrence P. Zatkoff

BANK OF AMERICA, N.A.,          Magistrate Mona K. Majzoub

       Defendant.

_____/

## OPINION AND ORDER

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on September 30, 2014

PRESENT:  THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

## I.  INTRODUCTION

This matter is before the Court on a Motion to Dismiss Plaintiff's First Amended Class

Action Complaint ("First Amended Complaint") from Defendant Bank of America, N.A. [dkt.

15].[1]  The motion has been fully briefed. The Court finds that the facts and legal arguments are

adequately presented in the parties' papers such that the decision-making process would not be

significantly aided by oral argument. Therefore, pursuant to E.D. Mich. L.R. 7.1(f)(2), it is

hereby ORDERED that the motion be resolved on the briefs submitted, without oral argument.

For the following reasons, Defendant's motion is GRANTED IN PART and DENIED IN PART.

_____

[1] Also before the Court is Defendant's Motion to Dismiss Plaintiff's Complaint [dkt. 10] and Plaintiff's *ex parte*
Motion for leave to file excess pages for brief in opposition to Defendant's Motion to Dismiss Plaintiff's First
Amended Complaint [dkt. 16].  As the Court is now ruling on Defendant's Motion to Dismiss Plaintiff's First
Amended Complaint, the Court hereby DENIES AS MOOT Defendant's Motion to Dismiss Plaintiff's Original
Complaint. Further, in the interest of justice, the Court hereby GRANTS Plaintiff's *ex parte* motion.

## II. BACKGROUND

A.  FACTUAL BACKGROUND

This putative class action challenges the actions Defendant Bank of America, N.A., ("Defendant") allegedly took before and after it entered into a loan modification agreement with Plaintiff Kenneth Botsford ("Plaintiff"). On June 24, 2009, Plaintiff and CWB Mortgage Ventures, LLC, made a loan arrangement consisting of a mortgage (the "Original Mortgage") and promissory note (the "Note"), which provided financing for Plaintiff's home located in Howell, Michigan (the "Property").

In or around early 2012, Plaintiff defaulted on his Original Mortgage.[2] Plaintiff asserts that by 2012 his Original Mortgage and Note were, through purchases and mergers, being serviced by Defendant. Plaintiff alleges he asked Defendant for a modification to the Original Mortgage and was initially told he did not qualify.  Both parties agree, however, that on August 10, 2012, Defendant offered Plaintiff a temporary modification through a trial plan under the Home Affordable Modification Program (the "Trial Period Plan" or the "TPP").[3]

Under the TPP, Plaintiff was to make reduced payments of $1,276.10 on October 1, 2012, November 1, 2012, and December 1, 2012. The TPP indicates that if Plaintiff successfully completed the requirements of the TPP, Plaintiff would be offered a permanent modification that "when executed, returned and accepted by [Defendant], will cure the default on [Plaintiff's] Loan." Dkt. # 11, Ex. B, p. 5. Plaintiff asserts—and Defendant does not dispute—that he successfully completed the requirements of the TPP by timely making all monthly payments.

---

[2] Plaintiff alleges in his First Amended Complaint that he only defaulted on the Original Mortgage because Defendant "fraudulently misrepresented" that Plaintiff must default on the Original Mortgage in order to qualify for a loan modification.
[3] Although Plaintiff's response to Defendant's motion calls into question whether the TPP was actually given pursuant to the Home Affordable Modification Program, Plaintiff provides no authority or argument to suggest this information has any bearing on the Court's ruling in this matter.

On or about December 21, 2012, Defendant offered Plaintiff a permanent loan modification. Specifically, Plaintiff's response to Defendant's motion asserts Defendant sent Plaintiff a package consisting of three different documents: 1) a "Commitment to Modify," 2) a "Loan Modification Agreement," and 3) an "Amended and Restated Note" (collectively, the "Permanent Modification Agreement" or "PMA"). Once executed by each party, the PMA would create a new mortgage for Plaintiff on the Property (the "Modified Mortgage"). The PMA made clear Defendant's intent was to modify specific terms contained within Plaintiff's Original Mortgage. The modified terms included the total amount of debt Plaintiff owed, his new interest rate, and a payment schedule that set Plaintiff's monthly payments at $1,276.23 as of January 1, 2013. The PMA also provided that, apart from these new terms, the Modified Mortgage encompassed all of the terms and conditions of the Original Mortgage[4] and bound both Plaintiff and Defendant. Further, the PMA informed Plaintiff that, "[u]pon completion of the modification process, which means all of the terms of the [PMA] have been met, your loan will be deemed current and [Defendant] will cease collection activity on your loan." *Id.*, at p. 5.

Finally, the PMA expressed in clear terms that if Plaintiff wanted to accept Defendant's offer to permanently modify the loan arrangement under the Original Mortgage, "[Plaintiff] must sign this commitment and deliver it to [Defendant] by January 20, 2013." *Id.* Defendant also asserts that Plaintiff was required to make his first modified payment on January 1, 2013, in order to receive the modification.

Plaintiff's First Amended Complaint alleges that the PMA was not signed by Plaintiff until February 22, 2013. Defendant agrees that February 22, 2013, was the date that Plaintiff

---

[4] *See* Dkt. # 11, Ex. C, p. 1–2 ("Except as otherwise specifically provided in this Agreement, the [Original Mortgage] shall remain unchanged, and [Plaintiff] and [Defendant] shall be bound by, and comply with all of the terms and provisions thereof, as amended by this Agreement, and the [Original Mortgage] shall remain in full force and effect . . .[.]")

3

executed and notarized copies of the documents contained in the PMA. Although Plaintiff's response to Defendant's underlying motion attempts to excuse Plaintiff's tardiness as the result of an issue Defendant had with the notary Plaintiff used, Plaintiff's First Amended Complaint contains no such explanation.  Plaintiff further asserts in his response that he did not send Defendant his first modified payment until January 10, 2013.  Both parties agree that Defendant did not countersign the Permanent Modification Agreement until March 15, 2013.

Plaintiff asserts—and Defendant does not dispute—that Defendant scheduled a foreclosure sale for the Property on March 7, 2013. Plaintiff further alleges that this sale was later adjourned to May 22, 2013, and then to August 28, 2013, before finally being cancelled on August 27, 2013. Additionally, Plaintiff asserts that, during the months of July and August of 2013, Defendant sent Plaintiff loan statements that misrepresented Plaintiff's principle balance, escrow balance, unapplied funds balance, and past due amounts. Plaintiff alleges these misrepresentations—coupled with the three allegedly scheduled foreclosure sales—show that Defendant failed to recognize the terms of the PMA. Finally, Plaintiff contends that, during June and July of 2013, Defendant made collection calls to Plaintiff and continued to report Plaintiff as 120 days past due on his mortgage to credit bureaus well after the PMA had gone into effect.

B.  PROCEDURAL BACKGROUND

On June 7, 2013, Plaintiff filed a complaint in Livingston County Circuit Court seeking injunctive relief. On August 6, 2013, Defendant removed the complaint to this Court. On September 5, 2013, Plaintiff filed a motion to remand. On October 18, 2013, this Court denied Plaintiff's motion.

On December 5, 2013, Plaintiff filed his First Amended Complaint, alleging breach of the Permanent Modification Agreement (Count I), promissory estoppel (Count II), breach of "the

Mortgage" (Count III), breach of contract of the implied duty of good faith and fair dealing (Count IV), fraud/intentional misrepresentation (Count V), constructive fraud (Count VI), violation of the Equal Credit Opportunity Act (Count VII), and violation of Michigan's Regulation of Collection Practices Act (Count VIII).

### III. LEGAL STANDARD

A motion brought pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted tests the legal sufficiency of a party's claims. The Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Watson Carpet & Floor Covering, Inc. v. Mohawk Indus., Inc.*, 648 F.3d 452, 456 (6th Cir. 2011) (citing *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 903 (6th Cir. 2009)). While this standard is decidedly liberal, it requires more than a bare assertion of legal conclusions. *See Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 319 (6th Cir. 1999). A party must make "a showing, rather than a blanket assertion of entitlement to relief" and "[f]actual allegations must be enough to raise a right to relief above the speculative level" so that the claim is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the party pleads factual content that allows the court to draw the reasonable inference the defendant is liable for the alleged misconduct." *Id.* at 556. *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "But where the well–pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

"When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.,* 259 F.3d 493, 502 (6th Cir. 2001)).

## IV. ANALYSIS

Defendant asserts that Plaintiff's First Amended Complaint must be dismissed in its entirety, as Plaintiff has failed to state a claim upon which relief may be granted. Specifically, Defendant addresses Plaintiff's alleged failures by splitting Plaintiff's First Amended Complaint into the following five categories:

A. Breach of Contract (Counts I & III);
B. Promissory Estoppel (Count II);
C. Breach of the Implied Duty of Good Faith and Fair Dealing (Count IV);
D. Plaintiff's Fraud Claims (Counts V and VI); and
E. Plaintiff's Statutory Claims (Counts VII and VIII).

A. PLAINTIFF'S BREACH OF CONTRACT CLAIMS (COUNTS I & III) STATE CLAIMS UPON WHICH RELIEF MAY BE GRANTED

Defendant argues Plaintiff's allegations that Defendant breached the PMA and "the Mortgage" fail to state a claim for breach of contract, as both are comprised only of the boilerplate elements of each claim. Plaintiff asserts he has suitably alleged a breach of contract based upon Defendant's failures to honor the terms of the PMA and the Modified Mortgage.

i.    Plaintiff's Breach of the Permanent Modified Agreement claim (Count I)

Defendant contends Plaintiff's vague allegations as to Defendant's supposed violation of the PMA fail to state a claim upon which relief may be granted. Specifically, Defendant asserts

6

Plaintiff fails to allege a contract as of the relevant time. Both parties agree that Plaintiff did not send Defendant an executed copy of the PMA until at least February 22, 2013. Further, both parties agree that Defendant did not countersign the agreement until March 15, 2013. Defendant thus argues that Plaintiff's claim that Defendant breached the PMA by scheduling a foreclosure sale for March 7, 2013, must fail, as there was no binding agreement as of that date.

Defendant further asserts that the remaining breaches Plaintiff alleges—other foreclosure attempts, collection calls, and the misapplication of payments—assigned blame for actions that do not arise from any contractual provision. Finally, Defendant contends Plaintiff fails to articulate how Defendant did anything inconsistent with the terms of the PMA, asserting that nothing in the PMA prevents Defendant from continuing collection actions if Plaintiff fails to satisfy the terms of the PMA. Defendant asserts that, as Plaintiff fails to allege that he actually remained current on the Modified Mortgage and satisfied the terms of the PMA, he has failed to state a claim for breach of the PMA. The Court is not convinced by Defendant's arguments.

For Plaintiff to state a breach of contract under Michigan law,[5] the PMA must meet the elements of a contract. *In re Brown*, 342 F.3d 620, 628 (6th Cir. 2003). A contract requires parties competent to contract, proper subject matter, legal consideration, mutuality of agreement, and mutuality of obligation. *Hess v. Cannon Twp.*, 696 N.W.2d 742, 748 (Mich. Ct. App. 2005). After showing that a valid contract exists, the plaintiff must show: (1) the terms of the contract, (2) a breach of one or more of those terms, and (3) the injury to the plaintiff caused by the breach. *Timmis v. Suzler Intermedics, Inc.*, 157 F. Supp. 2d. 775, 777 (E.D. Mich. 2001) (citing *Webster v. Edward D. Jones & Co., L.P.*, 197 F.3d 815, 819 (6th Cir. 1999)).

---

[5] The Court's jurisdiction over this case is based on diversity jurisdiction. As such, the Court must apply Michigan law. *See Westfield Ins. Co. v. Tech Dry, Inc.*, 336 F.3d 503, 506 (6th Cir. 2003).

Defendant's assertion that no valid contract existed between the parties until March 15, 2013, is well received. "In Michigan, a loan modification proposal d[oes] not ripen into a binding agreement if the modification agreement bears the signature of the borrower but not the lender . . . ." *Goss v. ABN AMRO Mortgage Grp.*, 549 F. App'x 466, 470 (6th Cir. 2013) (internal citations omitted). Although Plaintiff offers reasoning as to why he did not sign his version of the PMA until February 22, 2013, his rationale as to why the PMA should be deemed binding on that date—or any date before—is unconvincing. The Court therefore finds that the PMA did not become binding on either party until March 15, 2013, and any action taken prior to that date cannot form the basis for Plaintiff's breach of the PMA claim.

Notwithstanding the Court's conclusion that the PMA became an enforceable contract on March 15, 2013, the Court finds that Plaintiff's First Amended Complaint still sufficiently states a claim for breach of the PMA upon which relief may be granted. Defendant does not argue that the PMA does not constitute a contract under Michigan law. Instead, Defendant asserts that Plaintiff does not illustrate with enough specificity the terms of the PMA Defendant allegedly breached and that Defendant's actions do not actually amount to a breach of the PMA. These assertions, however, hinge on Defendant's incorrect contention that Plaintiff fails to articulate how Defendant acted inconsistently with the terms of the PMA. To the contrary, Plaintiff's First Amended Complaint contains detailed factual allegations outlining Defendant's alleged breach of the PMA. *See* Dkt. 11, ¶¶ 20 – 34. Specifically, Plaintiff's First Amended Complaint alleges the PMA contained language stating "[u]pon completion of the modification process . . . your loan will be deemed current and we will cease collection activity on your loan." *Id.* at ¶ 28; Dkt. 11, Ex. C., p. 5. Plaintiff further alleges the he "has performed all obligations under the Permanent Modification Agreement." Dkt. 11, ¶ 63. Despite his adherence to the PMA, Plaintiff

asserts Defendant scheduled foreclosure sales on the Property for May 22, 2013, and August 28, 2013. *Id.* at ¶¶ 30 and 32. Both of these attempted sales occurred after the date—March 15, 2013—Defendant admits it was bound to the PMA. Finally, Plaintiff alleges these attempted sales of the Property caused him harm. *Id.* at ¶65.

    As such, construing the complaint in the light most favorable to Plaintiff and drawing all reasonable inferences in favor of Plaintiff, the Court finds that Plaintiff has sufficiently plead a cause of action for Defendant's alleged breach of the PMA.[6] Accordingly, the Court denies Defendant's motion to dismiss with regards to Count I of Plaintiff's First Amended Complaint.

### ii.   Plaintiff's Breach of the Mortgage claim (Count III)

    Defendant also argues that Plaintiff does not state a claim upon which this Court may grant relief with regards to Defendant's alleged breach of "the Mortgage." Defendant asserts that, as it did not actually contract "the Mortgage," it cannot be held liable for any alleged breach of "the Mortgage." Further, Defendant asserts that Plaintiff's claim fails because Plaintiff admits to breaching "the Mortgage" first. The Court finds neither of these arguments convincing.

    The Court must first address both parties' inability to consistently identify to which mortgage they are referring. Indeed, Plaintiff's First Amended Complaint alleges Defendant breached "the Mortgage." *See* Dkt. # 11, p. 13. Defendant's underlying motion and reply to Plaintiff's response both assert the Court must dismiss this claim because Defendant did not contract "the Mortgage." *See* Dkt # 15, p. 22. The facts provided by both parties, however, indicate that two distinct mortgages—the Original Mortgage and the Modified Mortgage—exist. The Court will thus determine whether Plaintiff's First Amended Complaint states a claim for Defendant's alleged breach of either mortgage upon which relief may be granted.

---

[6] As the Court finds Plaintiff sufficiently pleads a cause of action for breach of the PMA with regards to the foreclosure actions alleged by Plaintiff, the Court need not address at this time Plaintiff's allegations that collection calls made by Defendant or Defendant's misapplication of payments under the TPP are breaches of the PMA.

The Court first turns its attention to the Original Mortgage. Section 12 of the Original Mortgage specifically states "[t]he covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower . . . ." Dkt. 11, Ex. A., p. 5. Defendant does not dispute Plaintiff's assertion that, "[t]hrough purchases and mergers" Defendant serviced Plaintiff's Original Mortgage and Note. Defendant provides only that it was not a party to "the mortgage." The clear language of the Original Mortgage, however, indicates that Defendant, as a successor to an initial or subsequent loan servicer, may be liable for violations of the Original Mortgage without being the original mortgagee. The Court thus finds that the language contained in the Original Mortgage clearly binds Defendant to the "covenants and agreements" contained within.

Likewise, the Court finds that Defendant is bound by the terms and conditions of the Modified Mortgage. As Plaintiff correctly points out, the PMA specifically states:

> Except as otherwise specified in this Agreement, the Security Instrument shall remain unchanged, and [Plaintiff] and Bank of America, N.A. shall be bound by, and comply with all of the terms and provisions thereof, as amended by this Agreement, and the Security Instrument shall remain in full force and effect and shall continue to be a first lien on [the Property].

Dkt. 11, Ex. C., p. 1. Further, Defendant and Plaintiff agree that Defendant signed the PMA on March 15, 2013. Defendant has offered no indication that the Court should view its endorsement of the papers Plaintiff signed and returned as anything other than an acceptance by Defendant to be bound to the terms and conditions contained within the Modified Mortgage and the PMA. As such, the Court finds Defendant is bound to the terms and conditions of the Modified Mortgage.

As established above, Plaintiff asserts Defendant is bound to the terms of the Modified Mortgage. Further, Plaintiff alleges that Defendant breached the Modified Mortgage by

attempting to foreclose upon the Property.[7] The Court established above that Plaintiff's First Amended Complaint contained sufficient factual allegations of Defendant's foreclosure attempts on the Property to make Plaintiff's claim for breach of the PMA plausible on its face. The Court finds these factual allegations apply equally to Plaintiff's breach of the Modified Mortgage claim. Finally, Plaintiff alleges these attempted sales of the Property caused him harm. As such, the Court finds Plaintiff has stated a claim for breach of the Modified Mortgage that allows the Court to draw the reasonable inference that Defendant is liable for the alleged misconduct.

The Court finds unconvincing Defendant's assertion that Plaintiff's claim must be dismissed because Plaintiff admits to "breaching the mortgage first." The Court recognizes that Plaintiff admits to breaching the Original Mortgage. Plaintiff does not allege, however, that he breached the Modified Mortgage. It thus appears that Defendant is arguing it cannot be held liable for breaching the Modified Mortgage because Plaintiff breached the Original Mortgage. The Court cannot agree; indeed, this sort of logic would allow a lender to breach a modified mortgage agreement at any time simply because a borrower defaulted under the original mortgage. This argument is both illogical and unjust, and as such the Court does not adopt it.

Finally, the Court finds equally unconvincing any argument from Defendant that Plaintiff breached the Modified Mortgage first by failing to return a signed copy of the PMA prior to January 20, 2013. Indeed, Defendant argues at length that there was no binding agreement between the two parties prior to Defendant signing the PMA on March 15, 2013. Defendant's argument therefore alleges Plaintiff breached the Modified Mortgage two months before it was binding upon either party. Defendant thus defeats its own argument by reminding the Court that

---

[7] Plaintiff asserts Defendant also breached the Modified Mortgage by failing to apply payments delivered by Plaintiff pursuant to the terms of the Modified Mortgage. As the Court finds Plaintiff sufficiently pleads a cause of action for breach of the Modified Mortgage with regards to the foreclosure actions allegedly taken by Defendant, the Court need not address Plaintiff's other allegation at this time.

"[a] breach-of-contract claim requires a contract" and then arguing Plaintiff "breached first" an agreement that was not yet a contract. *See* Dkt. # 15, p. 19 (citing *Keiper, LLC v. Intier Auto. Inc.*, 467 F.App'x 452, 459 (6th Cir. 2012)).

As established above, Plaintiff's First Amended Complaint sufficiently pleads that Defendant was bound to—and breached—the Modified Mortgage. As such, construing the complaint in the light most favorable to Plaintiff and drawing all reasonable inferences in favor of Plaintiff, the Court finds that Plaintiff has sufficiently plead a cause of action for Defendant's alleged breach of the Modified Mortgage. Accordingly, the Court denies Defendant's motion to dismiss with regards to Count III of Plaintiff's First Amended Complaint.

B.  PLAINTIFF'S PROMISSORY ESTOPPEL CLAIM (COUNT II) FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

Defendant argues that Plaintiff's promissory estoppel claim fails because it is based on alleged promises made in written contracts. Defendant argues that, under Michigan law, promissory estoppel provides a remedy only in the absence of a formal agreement. As all of Plaintiff's claims arise from the PMA, the Modified Mortgage and the TPP, Defendant asserts Plaintiff is not entitled to promissory estoppel.

The Court agrees that the state of Michigan only recognizes claims for promissory estoppel if a written contract does not exist. *See Advanced Plastics Corp. v. White Conson. Indus., Inc.*, 828 F. Supp. 484, 491 (E.D. Mich. 1993) (J. Feikens) ("promissory estoppel is an alternative theory of recovery where no contract exists . . . .") (citing *Huhtala v. Travelers Ins. Co.*, 401 Mich. 118, 133 (1977)). Further, Plaintiff makes no attempt to counter Defendant's

argument, instead simply asking in his response to Defendant's motion for leave to amend.  The

Court finds such a request improper, as it is futile and violates E.D. Mich. L.R. 15.1[8]

Accordingly, the Court finds that Plaintiff's promissory estoppel claim (Count II) fails to

state a claim upon which relief may be granted.

### C. Plaintiff's Breach of the Implied Duty of Good Faith and Fair Dealing Claim (Count IV) Fails to State a Claim upon which Relief may be Granted

Defendant argues Plaintiff's claim asserting breach of the implied duty of good faith and

fair dealing fails because the state of Michigan does not recognize such a cause of action. While

Defendant acknowledges that some Michigan courts have implied a duty of good faith exists in

contractual relationships, Defendant argues this only occurs where performance of a party's

duties under the contract are discretionary. Defendant argues Plaintiff fails to sufficiently allege

any portion of the Original Mortgage, the TPP, the PMA or the Modified Mortgage that makes

Defendant's performance discretionary.  As such, Defendant asserts this claim must fail.

The Court finds Defendant's arguments persuasive. At the outset, the Court notes the

apparent discrepancy between several decisions within this circuit as to whether Michigan

recognizes a cause of action for breaching an implied duty of good faith and fair dealing.

*Compare Soto v. Wells Fargo Bank, N.A.*, Case No. 11-14064, 2012 WL 113534 at *5 (E.D.

Mich., Jan. 13, 2012) (J. Cohn) (Michigan law "simply does not recognize a cause of action for

breach of the implied covenant of good faith and fair dealing.") (internal citations and quotations

omitted), *with  Stephenson v. Allstate Ins. Co.*, 328 F.3d 822, 826 (6th Cir. 2003) ("An implied

covenant of good faith and fair dealing in the performance of contracts is recognized by

Michigan law only where one party to the contract makes its performance a matter of its own

---

[8] E.D. Mich. L.R. 15.1 states "[a] party who moves to amend a pleading shall attach the proposed amended pleading to the motion."  Plaintiff failed to properly move to amend his already amended complaint and failed to attach a proposed amended pleading.

discretion."). Even if the Court were to interpret Michigan law as recognizing such a cause of action, the Court finds Plaintiff has not satisfied the key requirement for such a claim: Defendant's alleged discretion. Plaintiff's First Amended Complaint simply concludes that Defendant has the "discretion" to modify Plaintiff's Original Mortgage and Note, and has the "discretion" to apply Plaintiff's monthly payments under the TPP. These conclusory statements do not provide the proof needed to sufficiently state a plausible claim. *See Stephenson*, 328 F. 3d at 826 ("Discretion arises when the parties have agreed to defer decision on a particular term of the contract . . . this circuit has declined to ascribe a covenant of good faith and fair dealing in the interpretation of a contract to override express contract terms.") (internal citations and quotations omitted).

Further, Plaintiff's response to Defendant's underlying motion does not provide persuasive argument that this cause of action should not be dismissed. Instead, Plaintiff argues that this cause of action should exist only "[i]n the event this Court were to find the terms set forth in the [Commitment to Modify] are not part of the [PMA]." Dkt. # 17, p. 18. The Court has already established the documents comprising the PMA are all part of the binding agreement established between the two parties on March 15, 2013. As such, Plaintiff's argument would suggest he agrees that he no longer wishes to pursue his cause of action for an alleged breach of the implied duty of good faith and fair dealing.

Accordingly, the Court finds that Plaintiff's breach of the implied duty of good faith and fair dealing claim (Count IV) fails to state a claim upon which relief may be granted.

### D. PLAINTIFF'S FRAUD CLAIMS (COUNTS V AND VI) FAIL TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED.

Defendant next argues that Plaintiff's claims of fraud/intentional misrepresentation (Count V) and constructive fraud (Count VI) fail to state a claim upon which relief may be

granted. Defendant asserts Plaintiff fails to properly plead either claim, thereby violating the requirements of Rule 9(b) of the Federal Rules of Civil Procedure. Defendant also asserts each alleged misrepresentation Plaintiff attributes to Defendant concerns future conduct, which Defendant claims cannot be the basis for a fraud claim under Michigan law.

Prior to deciding whether Plaintiff's fraud claims survive under Michigan law, the Court must first discern whether they satisfy the heightened pleading requirements of Rule 9 of the Federal Rules of Civil Procedure. *See Ram Int'l, Inc. v. ADT Sec. Services, Inc.*, 555 Fed. App'x 493, 499 (6th Cir. 2014) ("although Michigan law governs with respect to the substantive elements of fraud, [the Court must] first consider whether [Plaintiff] has met the pleading requirement.") (internal citations omitted). Rule 9(b) "requires a plaintiff: (1) to specify the allegedly fraudulent statements; (2) to identify the speaker; (3) to plead when and where the statements were made; and (4) to explain what made the statements fraudulent." *Republic Bank & Trust Co. v. Bear Stearns & Co.*, 683 F.3d 239, 247 (6th Cir. 2012).

Under Michigan law, fraud consists of the following elements: (1) that defendant made a material misrepresentation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without knowledge of its truth, and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury. *Hi-Way Motor Co. v. Int'l Harvester Co.*, 398 Mich. 330, 336 (1976). "Each of these facts must be proved with a reasonable degree of certainty, and all of them must be found to exist; the absence of any one of them is fatal to recovery." *Id.* Further, Michigan law requires that "an action for fraudulent misrepresentation must be predicated upon a statement relating to a past or an existing fact. Future promises are contractual and do not constitute fraud." *Ram Int'l, Inc. v. ADT Sec. Servs., Inc.*, Case No. 11-

15

10259, 2011 WL 5244936 at *5 (E.D. Mich. Nov. 3, 2011) (J. Edmunds) *aff'd*, 555 F. App'x 493 (6th Cir. 2014) (citing *Hi-Way Motor Co.*, 398 Mich. 330).

Michigan courts identify an exception, however, to the necessity that fraudulent misrepresentation be related to past or existing facts by recognizing the claim of fraudulent inducement. Fraudulent inducement to enter a contract occurs when "a party materially misrepresents future conduct under circumstances in which the assertions may reasonably be expected to be relied upon and are relied upon." *Samuel D. Begola Servs. v. Wild Bros.*, 210 Mich. App. 636, 639 (1995). Fraudulent inducement renders the contract voidable at the election of the defrauded party. *Id.* at 640. However, a defendant "must allege facts from which it could be concluded that [its] reliance was reasonable." *Issa v. Provident Funding Group, Inc.,* No. 09–12595, 2010 WL 538298, *5 (E.D. Mich. Feb.10, 2010) (citing *Novak v. Nationwide Mut. Ins. Co.,* 235 Mich. App. 675, 599 N.W.2d 546, 553–54 (Mich.Ct.App.1999)). Under Michigan law, "reliance upon oral representations or prior documents, even if false, is unreasonable if the party enters into a subsequent agreement." *Ram Int'l, Inc.*, 2011 WL 5244936 at *5.

With these standards in mind, the Court now turns to Plaintiff's claims. First, the Court finds that Plaintiff's fraud claims do not satisfy the requirements set forth in Rule 9(b). Plaintiff's First Amended Complaint provides three different "material representations" that were allegedly false. *See* Dkt. 11, p. 16. Plaintiff completely fails to "explain what made the statements fraudulent," however, instead simply concluding that "Defendant's material representations were false." *Id.* The Court finds this lone sentence is nothing more than a blanket assertion of entitlement to relief, and cannot satisfy Rule 9(b)'s explanatory requirement.

Plaintiff does not address Defendant's contention that his pleadings fail to allege fraud with the specificity required by Rule 9(b), but instead argues that Plaintiff has satisfactorily plead

16

claims for fraud in the inducement. Even if the Court were to accept that Plaintiff's fraud claims satisfy Rule 9(b), Plaintiff's claims still would not survive. As indicated above, "reliance upon oral representations or prior documents, even if false, is unreasonable if the party enters into a subsequent agreement." *Ram Int'l, Inc.*, 2011 WL 5244936 at *5. Plaintiff's allegations concerning the TPP are thus "unreasonable," as Plaintiff entered into a subsequent agreement—the PMA—with Defendant. Plaintiff's lone assertion that the PMA contains a fraudulent statement—that Defendant would deem Plaintiff's loan current and would cease collection activity on the loan when Plaintiff completed the modification process—also fails, as Plaintiff provides no evidence he actually relied upon this statement. Plaintiff's allegation that he "acted in justifiable reliance" upon this representation is not supported with any evidence; indeed, Plaintiff admits he did not adhere to other portions of the PMA, such as returning an executed copy of the PMA to Defendant prior to January 20, 2013. The Court thus finds Plaintiff's unsupported legal conclusions—absent factual allegations—do not raise a right to relief.

Finally, even if the Court were to find that Plaintiff's fraud claims satisfy Rule 9(b), and that Plaintiff has sufficiently plead a claim for fraud in the inducement, Plaintiff's fraud claims would nevertheless still fail. Under Michigan law, "a tort action stemming from misfeasance of a contractual obligation [is a] violation of a legal duty separate and distinct from the contractual obligation." *Fultz v. Union-Commerce Associates*, 470 Mich. 460, 467 (2004). The Michigan Supreme Court further explained that "the threshold question is whether the defendant owed a duty to the plaintiff that is separate and distinct from the defendant's contractual obligations. If no independent duty exists, no tort action based on a contract will lie." *Id.* Plaintiff's fraud claims are both tort claims under Michigan law, yet they fail to allege Defendant owed Plaintiff a duty "separate and distinct from" the TPP and the PMA. Indeed, Plaintiff's claims both hinge on

phrases contained in the TPP and the PMA. As such, the Court finds Plaintiff has failed to satisfactorily plead either of his fraud claims.[9]

Accordingly, the Court finds that Plaintiff's fraud claims (Counts V and VI) fail to state a claim upon which relief may be granted.

E. PLAINTIFF'S STATUTORY CLAIMS (COUNTS V AND VI) FAIL TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED.

Finally, Defendant asserts Plaintiff's claims alleging violations of the Equal Credit Opportunity Act ("ECOA") and Michigan's Regulation of Collection Practices Act ("MRCPA") fail to state a claim upon which relief may be granted. After reviewing the arguments and authorities presented by both parties, the Court agrees with Defendant.

i.      Plaintiff's ECOA claim (Count VII)

Defendant argues Plaintiff's ECOA claim must fail for three reasons: a) Plaintiff fails to adequately allege Defendant took "adverse action" against Plaintiff, b) any action taken by Defendant while Plaintiff was in default does not constitute "adverse action" under the ECOA, and c) Plaintiff fails to allege any of Defendant's actions constitute discrimination. Plaintiff argues Defendant did take adverse action against it as is defined by the ECOA, that some of these actions occurred after Plaintiff's loan was deemed current under the PMA, and that Plaintiff does not have to plead any discriminatory actions when pleading a violation of the ECOA's notice provisions.  The Court finds Plaintiff's arguments unconvincing.

"The ECOA prohibits creditors from discriminating against any credit applicant 'with respect to any aspect of a credit transaction . . . on the basis of race, color, religion, national origin, sex, or marital status.'" *Mays v. Buckeye Rural Elec. Co-op., Inc.*, 277 F.3d 873, 876 (6th

---

[9] Plaintiff asks this Court for leave to amend his First Amended Complaint so as to state a breach of contract claim based on Defendant's alleged breach of the TPP. As with Plaintiff's other request to amend the Court finds such a request improper, as it is futile and violates E.D. Mich. L.R. 15.1.

Cir. 2002) (citing 15 U.S.C. § 1691(a)(1)). A plaintiff can establish a *prima facie* case under the ECOA "by showing: (1) Plaintiff was a member of a protected class; (2) Plaintiff applied for credit from [Defendant]; (3) Plaintiff was qualified for the credit; and (4) despite Plaintiff's qualification, [Defendant] denied [Plaintiff's] credit application." *Id*. at 877.

Plaintiff does not attempt to argue Defendant discriminated against him. Instead, Plaintiff argues in his response to Defendant's motion that Plaintiff was not required to allege a discriminatory act in order to state a violation of the ECOA, as the ECOA contains notice requirements Plaintiff alleges apply to all loan applicants. Plaintiff asserts in his response to Defendant's motion that Defendant has failed to provide Plaintiff with any notice whatsoever as to why it "revoked" Plaintiff's credit under the PMA by initiating foreclosure attempts, reporting him as delinquent to credit bureaus, and failing to apply Plaintiff's TPP payments.

The Court finds Plaintiff has failed to adequately plead a violation of the ECOA. Even if the Court assumes that Defendant took "adverse action" against Plaintiff after his loan under the PMA was current, and that Plaintiff does not need to plead a discriminatory act, [10] Plaintiff still has not satisfied the pleading requirements for a successful ECOA claim. Indeed, a cursory review of Plaintiff's ECOA count reveals that Plaintiff never alleges Defendant failed to provide Plaintiff with notice of the adverse actions it allegedly took. *See* Dkt. # 11, ¶¶ 109–121. Instead, Plaintiff's argument that Defendant violated the notice requirement of the ECOA appears for the first time in his response to Defendant's motion. Plaintiff cannot correct a faulty claim in his

---

[10] Although Plaintiff cites to decisions from this District to support this argument, *see Williams v. MBNA Am. Bank, N.A.*, 538 F. Supp. 2d 1015 (E.D. Mich. 2008) (J. Rosen), the Court notes that "[a] decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." *Camreta v. Greene*, 131 S. Ct. 2020, 2033, n. 7 (2011). Further, the Sixth Circuit established that "[t]he purpose of the ECOA is to eradicate credit discrimination waged against women, especially married women whom creditors traditionally refused to consider for individual credit." *Mays* 277 F.3d at 876.

First Amended Complaint through a response to Defendant's motion. *See Jocham v. Tuscola Cty.*, 239 F. Supp. 2d 732 (E.D. Mich. 2003) (J. Lawson); *see also First Mercury Ins. Co. v. Christopher K. Corp.*, Case No. 09–14918, 2010 WL 4683928 at *4 (E.D. Mich. Nov. 10, 2010) (J. Zatkoff) ("plaintiffs may not amend their complaint through a response brief.")

Accordingly, the Court finds that Plaintiff's ECOA claim (Count VII) fails to state a claim upon which relief may be granted.

### ii.   Plaintiff's MRCPA claim (Count VIII)

Defendant asserts Plaintiff failed to state a claim upon which relief may be granted under the MRCPA because Defendant is not a "regulated person" as defined by the MRCPA.  Further, Defendant argues Plaintiff's First Amendment Complaint fails to provide the sufficient factual support necessary to survive a motion to dismiss. The Court agrees.

The MRCPA only applies to a "regulated person," defined as "a person whose collection activities are confined and are directly related to the operation of a business other than that of a collection agency including . . . [a] state or federally charted bank when collecting its own claim." M.C.L. § 445.251(g)(ii). As Defendant correctly argues, Defendant—as the loan servicer of Defendant's Original and Modified Mortgages—is a federally charted bank, but is not "collecting its own claim." *See Stolicker v. Muller, Muller, Richmond, Harms, Myers, & Sgroi, P.C.,* Case No. 04-733, 2005 WL 2180481 at *7 (W.D. Mich. Sept. 9, 2005) ("In order to be regulated under the [MRCPA], [a bank] must be performing collection activities on its own claim, not on behalf of another.")

Plaintiff does not dispute Defendant's claim that it is a state or federally charted bank not collecting on its own claim. Rather, Plaintiff argues that, while the MRCPA lists entities included in the definition of "regulated persons," the law does not purport to set forth a

comprehensive list of qualifying entities. Plaintiff fails to support this argument with any authority, instead merely asserting that the MRCPA broadly defines "regulated persons." The Court is not convinced, however, as it is unwilling to read Plaintiff's unsupported legal conclusion as a factual allegation supporting his claim.

Accordingly, the Court finds that Plaintiff's MRCPA claim (Count VIII) fails to state a claim upon which relief may be granted.

## V. CONCLUSION

Accordingly, IT IS HEREBY ORDERED that Defendant's Motion to Dismiss Plaintiff's First Amended Complaint [dkt. 15] is GRANTED IN PART and DENIED IN PART.

Specifically, IT IS HEREBY ORDERED that Defendant's Motion to Dismiss with regards to Count II and Counts IV–VIII of Plaintiff's First Amended Complaint is GRANTED.

IT IS FURTHER ORDERED that Defendant's Motion to Dismiss with regards to Counts I and III of Plaintiff's First Amended Complaint is DENIED.

IT IS FURTHER ORDERED that Defendant's Motion to Dismiss Plaintiff's Complaint [dkt. 10] is DENIED AS MOOT.

IT IS FURTHER ORDERED that Plaintiff's *ex parte* Motion for leave to file excess pages for brief in opposition to Defendant's Motion to Dismiss Plaintiff's First Amended Complaint [dkt. 16] is GRANTED.

IT IS SO ORDERED.

s/Lawrence P. Zaqtkoff
HON. LAWRENCE P. ZATKOFF
Date:  September 30, 2014          U.S. DISTRICT JUDGE

21